UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

| | | |
|---|---|---|
| BARBARA FORLASTRO<br>AND ROBERT G. FORLASTRO,<br>AS CO-ADMINISTRATORS OF<br>THE ESTATE OF ROBERT J. FORLASTRO | : | CASE NO.:<br>1:07-CV-3288 (RPP) |
| VS. | : | MEMORANDUM IN SUPPORT OF MOTION FOR APPLICATION OF CONNECTICUT LAW |
| JAMES COLLINS | : | |

-----------------------------------------------------------------

Plaintiffs, ROBERT G. FORLASTRO and BARBARA FORLASTRO as Co-Administrators of the Estate of ROBERT J. FORLASTRO, by and through their attorneys, STRATTON FAXON, file this MEMORANDUM IN SUPPORT OF MOTION FOR APPLICATION OF CONNECTICUT law, and respectfully request the Honorable Court to apply Connecticut's wrongful death damages law in this wrongful death case, based on the following.

The facts of this tragic case are not substantially in dispute. On December 6, 2004, Robert Forlastro was killed when he was run over by a large utility truck driven by the defendant James Collins, in the parking lot of a deli in Carmel, New York. The cause of Mr. Forlastro's death was laceration of the brain and blunt trauma to the cranium. Prior to and at the time of his death, Mr. Forlastro, resided at 18 Kingswood road in Danbury, CT. Robert was employed by F&H Sanitation and Diversified Waste Disposal, garbage companies located and operated in Danbury, Connecticut. Most of Mr. Forlastro's work was performed in the State of Connecticut, but on the day of the accident he was collecting garbage in the Carmel, New York area. The day's work began at the company

shop in Danbury, at which time the employees obtained tools and equipment and were dispatched to their jobs. Mr. Forlastro's supervisor decided that Forlastro would work that day in Carmel. Just prior to his death, Forlastro and his co-employee, William DeLeo, decided to stop at a deli in Carmel, New York, for breakfast. At the time of his death Mr. Forlastro had exiting a vehicle owned by his employer. At the time Mr. Forlastro exited the vehicle and began walking toward the deli, he was struck by a large line truck operated by defendant Collins, an employee of New York State Electric and Gas Corp. ("NYSEG"). Collins is a resident of Brewster, New York. His property borders on and encroaches on Danbury, Connecticut.

After his death, Mr. Forlastro's parents, Barbara and Robert G. Forlastro, petitioned the Probate Court in Danbury, Connecticut for an estate to be opened so that this wrongful death action could be commenced. This action was initially filed in the United States District Court in Connecticut and was commenced by service of process on Mr. Collins in Danbury, Connecticut. Mr. Collins frequently drives his vehicle in Danbury, Connecticut and it was on a trip into Connecticut that Mr. Collins was served.

## 28 U.S.C. § 1404(a) TRANSFER

Counsel appeared in Connecticut for Mr. Collins and thereafter the parties stipulated, under 28 U.S.C. § 1404(b), that the matter could be transferred to the Southern District of New York. See Forlastro v. Collins, No. 3:06cv1541, Doc. #17 (D.Conn. April 13, 2007). Thereafter, the court, Chatigny, C.J., *sua sponte*,

converted the transfer to one under 28 U.S.C. § 1404(a) and sent the case to the Southern District of New York. Id.

It is black letter law that when a transfer is initiated under § 1404(a), the transferor court must apply the choice of law principles of the transferee forum. See Ferens v. John Deere Co., 494 U.S. 516, 519 (1990) (following a transfer under § 1404(a) the transferee court must follow the choice-of-law rules that prevailed in the transferor court); Sheldon v. PHH Corp, 135 F.3d 848, 852 (2d Cir. 1998) (noting that choice of law rules from transferor forum apply in transferee forum even if § 1404(a) transfer initiated by the plaintiff); Computer Assocs. Int'l v. Altai, Inc., 22 F.3d 32, 35 n.3 (2d Cir. 1994) (choice of law rule from transferor court applied); see also 17 Moore's Federal Practice § 111.20[1][a] (Matthew Bender 3d ed.) ("The [Supreme] Court views Section 1404(a) as merely a 'housekeeping measure' that does not carry with it a change in the applicable law.").

In Van Dusen v. Barrack, 376 U.S. 612, 637-640 (1964), the Supreme Court held that where a case is transferred by the defendant pursuant to 28 U.S.C. § 1404(a), the transferee court should apply the law of the transferor forum in order to prevent defendants from forum-shopping. The Court left open the question, later resolved affirmatively in Ferens v. John Deere Co., 494 U.S. 516 (1990), of whether the same rationale should apply where the plaintiff seeks a transfer. Van Dusen, 376 U.S. at 637-40. Ferens was a personal injury case originally filed in federal district court in Mississippi, where the statute of limitations for personal injury cases was six years. Under Mississippi law, "[a]

Mississippi court would rule that Pennsylvania's substantive law controls the personal injury claim but that Mississippi's own law governs the limitation period." Id. at 519. Thus, the case was not time-barred in Mississippi, even though Pennsylvania's two year statute of limitations for personal injury cases had already expired. The Mississippi court had personal jurisdiction over the defendant, and granted plaintiffs' motion to transfer venue to Pennsylvania for the convenience of the parties under 28 U.S.C. § 1404(a). Id. at 520. After the case was transferred, the Pennsylvania district court held that because plaintiffs had initiated the transfer, Pennsylvania's shorter statute of limitations applied and the case was time-barred. Id. at 521. The Supreme Court reversed, holding that although "our rule may seem too generous because it allows the [plaintiffs] to have both their choice of law and their choice of forum, or even to reward [them] for conduct that seems manipulative," id. at 531, "the transferor law should apply regardless of who makes the § 1404(a) motion." Id.

Thus, it is clear that regardless of which party makes the motion, or if all parties consent, the transferor forum's choice of law principles should apply. Since the District of Connecticut had personal jurisdiction over Mr. Collins, as the court did in Ferens, the choice of law principles of Connecticut should adhere in this District. Id.

### CONNECTICUT CHOICE OF LAW PRINCIPLES

To decide which state's law applies, "a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which the federal court sits." Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002); see also

4

Klaxon Co. V. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). While Connecticut "traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or *lex loci delicti* . . . in certain circumstances in which the traditional doctrine does not apply, the better rule is the analysis contained in the Restatement (Second) of the Conflict of Laws." Williams v. State Farm Mutual Automobile Insur. Co., 229 Conn. 359, 370 (1994); see O'Connor v. O'Connor, 201 Conn. 632 (1986). "Recently, courts applying Connecticut choice-of-law law have used the Restatement approach even where *lex loci* would lead to the same result." United States Fidelity & Guaranty Co. v. S.B. Phillips Co., Inc., 359 F. Supp. 2d 189, 206 (D. Conn. 2005). Thus, the trend in Connecticut is to apply the most significant relationship test under Sections 6 and 145 of the Restatement (Second) that the Connecticut Supreme Court adopted in O'Connor. Id. Moreover, the Connecticut courts adhere to the principles of *depecage* – application of different state's choice of law analysis to distinct issues in the case. See In re Helicopter Crash in British Columbia, No. 04md1649(SRU), at 16 (D.Conn. Apr. 16, 2007) (applying principles of *depecage* – utilizing different jurisdictions' law to issues of liability and loss allocation). Given the circumstances of this case the principle of *depecage* is appropriately applied – New York law should apply to the issue of liability (in reality there is no conflict here since both New York and Connecticut recognize common law principles of negligence in the operation of a motor vehicle) and Connecticut law should apply

5

to the issue of damages for the action brought by this Connecticut estate plaintiff in Connecticut.

The Restatement (Second) provides that: "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement 2d of Conflict of Laws ("Restat. 2d"), § 145(1). In the present case, the conduct regulating rules are the same – principles of negligence – and the issue of divergence is the measure of damages applicable in a wrongful death action. Under Connecticut law the measure of damages in a wrongful death action includes ante-mortem pain and suffering, loss of enjoyment of life of the decedent, loss of the decedent's earning capacity and necessary medical and funeral expenses. See Conn. Gen. Stat. § 52-555. New York, as this court is keenly aware, however, has a much less generous statutory scheme permitting only ante-mortem pain and suffering and pecuniary loss to the next of kin in addition to reasonable and necessary medical and funeral expenses.

Thus, the issue is whether the damages law of Connecticut – applicable to the Connecticut decedent who was at this location in New York on a fortuitous occasion – or the damages law of New York would apply to the damages sought by the administrators of this Connecticut estate.

Section 6 of the Restatement provides that, absent a statutory directive: "the factors relevant to the choice of the applicable rule of law include: (a) the needs of the interstate and international systems, (b) the relevant policies of the

6

forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restat. 2d, § 6(2). The choice of law analysis set forth in §§ 145 and 6 are applied by "weighing . . . the relative significance of the various factors that § 6 lists." O'Connor, 201 Conn. at 651.

To assist in the evaluation of these policy choices, the Restatement provides further guidance: "Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restat. 2d, § 145(2). The relative importance of these contacts is determined with respect to each distinct issue in the case. Id.

When the parties are not "grouped in a single state," as here, the fact that "one of the parties is domiciled or does business in a given state will usually carry little weight of itself." Restat. 2d, § 145 at cmt. e.  Thus, § 145(2)(b) does not significantly aid the court's choice-of-law inquiry.

As for § 145(2)(d), "[w]hen there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of

the relationship, the place where the relationship is centered is another contact to be considered." Restat. 2d, § 145 at cmt. e.

The seminal case in Connecticut on the choice-of-law analysis in a motor vehicle accident is O'Connor v. O'Connor, supra. O'Connor directs that it is the significance, not the number, of § 145(2) contacts that governs the choice of law inquiry. O'Connor, 201 Conn. at 652-53. To determine this significance, the court must apply the relevant § 6 guidelines to the facts of the present case. As stated, the contacts must be "evaluated according to their relative importance with respect to the particular issue," Restat. 2d, § 145(2). Not all of the § 6 factors will be equally important in every case. Indeed, comment b to § 145(1) states that the choices of policy emphasized in § 6 (d), (e), and (f) are "of lesser importance in the field of torts." Restat. 2d, § 145 at cmt. b. Because of the "relative insignificance" of (d), (e), and (f), the four remaining factors that are listed in § 6 "assume greater importance. Id. However, factor (g), ease in determination and application of the law to be applied, "should not be overemphasized, since it is obviously of greater importance that choice-of-law rules lead to desirable results." Restat. 2d, § 6 at cmt. j. Thus, this court should look especially at factors (a), (b), and (c) in its choice-of-law analysis. See Rosenthal v. Ford Motor Co., 462 F. Supp. 2d 296, 304 (D.Conn. 2006).

"These factors provide: '(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, [and] (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue.' Restat. 2d, § 6." Id.

Considering that New York does not recognize recovery for non-pecuniary damages and Connecticut does, "the court must 'analyze the respective policies and interests of [New York], the place of injury, and Connecticut, the forum state.' O'Connor, 201 Conn. at 653." Id. The first relevant Restatement § 6 factor, the 'needs of the interstate and international systems,' seeks to harmonize relations between states and 'to facilitate commercial intercourse between them.' Restat. 2d, § 6(a) & cmt. d. In the instant case, this factor does not offer much guidance, as it is "doubtful that this court's choice of law decision will have any bearing on this goal." Krstich v. United Services Auto. Ass'n, 776 F.Supp. 1225, 1232 (N.D. Ohio 1991); see also O'Connor, 201 Conn. at 651 (where there was a single car accident in Quebec involving two Connecticut domiciliaries, the court stated that '[w]e are not today concerned with a case that offends systemic policy concerns of another state or country')." Id. Likewise, the court's decision in this regard will not significantly impact the relationship between Connecticut and New York.

"As for the relevant policies of the forum state and other interested states, factors (b) and (c) of § 6, [New York], as the place of injury, has an interest in applying its standards[1] to the present case. However, according to comment e to Restatement (Second) § 145, the place of injury will not always play an important role in the choice-of-law analysis: 'for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue." Restat. 2d, §

---

[1] The standards here referenced are conduct standards – such as negligence – and the plaintiff has no quarrel with the application of New York negligence principals to guide this case.

9

145 at cmt. e. Some courts that apply the Restatement balancing test have expressly found that the place of injury is not important in product liability or other tort cases, where the injury could have occurred anywhere. Rosenthal, 462 F.Supp.2d at 303.

Furthermore, like the product liability law of the state of North Carolina in the Rosenthal case, the New York rule of limited recovery "expresses no interest in regulating the conduct of the defendant, but rather limits the liability exposure to which his conduct subjects him.' O'Connor, 201 Conn. at 654. As comment e to Rest 2d. § 146 (relating to personal injury) advises, an important factor in the "most significant relationship" analysis is to look at the purpose sought by the particular tort rule:

> [I]f the relevant local rule of the state where the injury occurred would impose absolute liability upon the defendant, it is probable that this state is seeking by means of this rule to insure compensation for the injured person. . . . If, on the other hand, the defendant would enjoy a special immunity for his conduct under the local law of the state of injury, it is not clear that the interests of this state would be furthered by application of its rule. Restat. 2d, § 146 at cmt. e (emphasis added).

Rosenthal, 426 F.Supp.2d at 304. In this case the New York wrongful death law does not regulate the conduct of the defendant, but rather supplies him with a limited immunity from the full scope of wrongful death damages available to Connecticut decedents under Conn. Gen. Stat. § 52-555. In Rosenthal, Judge Hall determined that there is very little interest that the forum state has (in that and in this case – Connecticut) in applying rules from other jurisdictions that provide special immunities – such as New York's limited wrongful death law. This is borne out by the Second Circuit's clear statement that both the

10

Connecticut legislature and the courts have applied conflict of laws principles to support and guarantee full compensation for the death of Connecticut decedents. See Saloomey v. Jeppesen & Co., 707 F.2d 671, 675 (2d Cir. 1983) ("Connecticut, through its legislature and courts, has indicated strong interest in fully compensating its domiciliaries when they file meritorious wrongful death and strict products liability actions."); see also O'Connor, 201 Conn. at 654 (refusing to apply Quebec no-fault rule because it "eschews investigation into the possible negligence of the defendant's conduct and limits the amount of damages the victim of the defendant's conduct may recover"). Those same policy reasons apply in this case to support the application of Connecticut damages law.

  Thus, Connecticut law should apply to this case with even more force than in Rosenthal. There, the plaintiffs were not even Connecticut domicilaries. Notwithstanding that fact, both conduct regulating rules (strict liability) and damages rules of Connecticut applied. The only event that occurred in Connecticut was the sale of the tire that was the subject of the litigation. Here, by contrast, the plaintiffs are Connecticut domicilliaries protected by the laws of the state of Connecticut including the principles of full compensation. See Saloomey, 707 F.2d at 675; O'Connor, 201 Conn. at 654-56 (noting that the plaintiff was "passing through" Quebec with no substantial connection other than that fact). Further, the plaintiff is a Connecticut estate. The defendant lives on the border of Connecticut with some of his property encroaches on Connecticut. The defendant makes frequent trips to Connecticut. While the incident occurred in New York, it is clearly fortuitous since the decedent, Mr. Forlastro, worked for a

company in Danbury, Connecticut. Thus, as in Rosenthal, "Connecticut's contacts with the litigation give it a legitimate interest in applying its law to the controversy." 426 F.Supp.2d at 304. Under the foregoing District Court and Connecticut Supreme Court precedent the law of Connecticut should apply to the measure of wrongful death damages in this case.

Another Connecticut case that favors the application of Connecticut law under these circumstances is Angerome v. Reid, 2006 Conn. Super. LEXIS 3634, at *13 (Conn. Super. 2006). In Angerome, the driver and both passengers were New York residents, and were primarily employed at the Brinks truck location in Brooklyn. The co-workers were making a delivery/pick-up in Connecticut when a fatal crash occurred. Under Connecticut law the co-worker defendant was not cloaked with workers' compensation immunity for the negligent operation of the motor vehicle and was subject to suit. Such an exception does not apply in New York -- thus immunity would apply. The court found that the law of the State of Connecticut applied to both the claim of Kiamesha Rogers and that of Ellen Angerome, Administratrix of the estate of Shannon Angerome despite the New York employment relationship and the fact that the New York immunized the New York domiciled co-worker from suit.

Likewise in Vecchio v. Rye Brook OB/GYN, 2003 Conn. Super. LEXIS 2862, at *6-7 (Conn. Super. 2003), the court ruled that Connecticut law would apply to a wrongful death claim asserted by a New York decedent's estate against a New York obstetrical practice and a New York physician. The prenatal

12

care along with the death of the plaintiffs' minor decedent occurred in New York, prior to Santina Vecchio's June 11, 2000, admission to Greenwich Hospital.

The plaintiffs claimed that Santina Vecchio was advised during her pregnancy, that any hospital care would be provided at Greenwich Hospital, where the defendant, Elizabeth Legatt, M.D. (a New York resident) was in the process of obtaining privileges during the spring of 2000.

The court in Vecchio applied the factors of the Restatement (Second) Conflicts of Law, § 6, as informed by §§ 145(2) and 175. In referencing O'Connor, the court wrote: "the court held that Connecticut law should be applied, notwithstanding the fact that Quebec was both the place of the injury, and the place where the conduct causing the injury occurred. It reasoned that both the plaintiff and the defendant were Connecticut residents; and that the parties were merely "passing through" Quebec at the time of the accident. The location of the accident was purely fortuitous. O'Connor v. O'Connor, supra, 655." Id. at *13. Analyzing the factors the court concluded that "[t]he relationship of the parties, therefore, is centered in both New York and Connecticut." Id.

"In considering which law should apply, the public policy interests of the forum state should be considered. Williams v. State Farm Mutual Automobile Ins. Co., 229 Conn. 359, 373 (1994)." Id. at *13-14. The policies in this particular case have been set forth in detail above and are focused on Connecticut law's desire and purpose to fully compensate Connecticut residents and Connecticut estates. As in Vecchio, "[t]he application of Connecticut law, based upon the facts of this case, will not produce an arbitrary or irrational result,

13

and no satisfactory rationale has been presented for resort to New York law." Id. at *14. Accordingly, as set forth above, the state court decisions fully support the application of Connecticut law in this case.

Similarly, Ficarra v. Akers, 1999 Conn. Super. LEXIS 2363 (Conn. Super. 1999), supports the application of Connecticut law to this case. Ficarra involved a car accident that occurred in Virginia. That accident involved a car leased by the defendant, Ford Motor Credit Company (Ford), to Jabie Joshua Akers, a passenger therein who died in the crash.

The Ficarra court wrote: "As a threshold matter, the court will not apply the *lex loci delicti* doctrine here because the application of that rule would violate an important policy of this state, i.e., assuring that a plaintiff is afforded "the full scope of remedies for tortious conduct that Connecticut law affords." O'Connor v. O'Connor, supra, 201 Conn. 657." Id. at *4. "Applying the Restatement approach, the court concludes that Connecticut has the most significant relationship to the occurrence and the parties. Although the injury and the conduct causing it occurred in Virginia; 1 Restatement (Second), *supra*, 145(2)(a) and (b); that is an entirely fortuitous happening. See O'Connor v. O'Connor, supra, 201 Conn. 655-56. Although these two factors appear to favor application of Virginia law; see Williams v. State Farm Mutual Automobile Ins. Co., 229 Conn. at 372 (stating factors (a) and (b) of 145 of the Restatement (Second), "are the most significant in determining which state's tort law to apply"); the court notes that these contacts are not dispositive. See O'Connor v. O'Connor, supra, 201 Conn. 652 (stating, "we need to recall that it is the significance, and not the

14

number, of 145(2) contacts that determines the outcome of the choice of law inquiry under the Restatement approach"). Indeed, the relevant consideration involves "a searching case-by-case contextual inquiry into the significance of the interests that the law of competing jurisdictions may assert in particular controversies." O'Connor v. O'Connor, supra, 201 Conn. 658. The court continued by stating "[i]ndeed, such an application would cut against the policy of this state to provide plaintiffs with the full scope of remedies available in this state. See Restatement, supra, 6(2)(b); O'Connor v. O'Connor, supra, 201 Conn. 657." Id. at *6. Accordingly, the court applied Connecticut law to the dispute.

Based on the foregoing authority and the compelling policies of the transferor jurisdiction of Connecticut, this court should apply the Connecticut wrongful death statute, Conn. Gen. Stat. § 52-555, to determine the measure of damages in this Connecticut filed, Connecticut decedent, Connecticut-filed estate wrongful death action.

Dated: June 1, 2007
At New Haven, CT

THE PLAINTIFFS

*/s/ Joel T. Faxon*

Joel T. Faxon (jf1611)
Stratton Faxon
59 Elm Street
New Haven, CT 06510
Tel.: 203-624-9500
Fax: 203-624-9100
jfaxon@strattonfaxon.com

**CERTIFICATION**

This is to certify that a copy of the foregoing Appearance was efiled via ECF on this date to the following counsel of record:

Sara Luca Salvi, Esq.
Mead, Hecht, Conklin & Gallagher, LLP
109 Spencer Place
Mamoroneck, New York 105431

_____
Joel T. Faxon