UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
BARBARA FORLASTRO and ROBERT G.
FORLASTRO, as co-administrators of the Estate of
ROBERT J. FORLASTRO

                       Plaintiffs,             07CV3288 (RPP)

           - against -                **OPINION AND ORDER**

JAMES COLLINS,

                      Defendant.
-----------------------------------------------------------X

[USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: ___ / DATE FILED: 7/18/08]

**ROBERT P. PATTERSON, JR., U.S.D.J.**

This is a wrongful death action in which Barbara Forlastro and Robert G. Forlastro ("Plaintiffs") moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure on March 24, 2008 on the grounds that, under New York State law and the facts of this case, the jury reached an inconsistent verdict in finding that the negligence of James Collins ("the Defendant") was not a substantial factor in causing the death of Robert J. Forlastro ("the decedent"). (Pls.' Mot. for New Trial at 1.) For the reasons that follow, the Plaintiffs' motion is denied.

### BACKGROUND

The evidence presented to the jury showed that on December 6, 2004 at around 9 a.m., the decedent, who was a sanitation worker, died after he left the passenger seat of a sanitation truck in a parking lot in Carmel, N.Y. in order to get food from a deli. There were no witnesses to the actual accident. The Defendant, who was the driver of a gas and electric utility truck, testified that he was driving in the parking lot at approximately 4 miles per hour in a lane

between vehicles parked in front of the deli on his right, and on the other side, two sanitation trucks parked to his left. (Tr. 217-219.) The Defendant stated that "the deli was full. That is a busy time in the morning. All the trades are in there." (Tr. 217.) The Defendant also said that while driving, he kept to the right side of the lane and his truck was not close to the garbage trucks. (Tr. 218.)

The Defendant, who was observing parked vehicles to his left and right, observed that the passenger side door of the "front sanitation truck" (Tr. 219) was ajar by about "eight or ten inches" (Tr. 220), and the Defendant saw the decedent wearing a neon vest and seated in the passenger seat of that sanitation truck. (Tr. 220.) When the Defendant first observed the decedent, the front bumper of the Defendant's truck was approximately 5 to 7 feet from the back of the cab of the sanitation truck in which the decedent was seated. (Tr. 220.) The Defendant acknowledged he had not sounded his horn, testifying as follows:

> I was very confident I had enough room. In those particular trucks to get out in a safe manner you should have the door opened 90 degrees and I still had that much room. I was confident I had room.

(Tr. 222.)

The Defendant said he did not hear anything as he was passing the sanitation truck, and the window of his utility truck was closed. (Tr. 225.) The Defendant stated that the first time he had knowledge that an accident occurred was when he "felt a bump." (Tr. 225.) He asked William Ball, who was the Defendant's co-worker and the passenger of the Defendant's truck, "did they put a speed bump here over the weekend to slow people down going through the parking lot" (Tr. 225), and Mr. Ball responded that "he didn't think so." (Tr. 225.) The Defendant looked in the "blind-spot mirror" and saw two legs sticking out under his truck. (Tr. 225.) At that point in time, the Defendant immediately stopped his truck, and applied the parking brake. (Tr. 226.) He

2

estimated that about 5 or 6 seconds had passed between the time he felt the bump and the time he got out of the truck. (Tr. 226.) According to the Defendant, the decedent's legs were sticking out from under the truck, his head was under the truck, and his arm and cell phone were under the truck. (Tr. 226.) At the time of the accident, the Defendant submitted to a breathalyzer test for alcohol, the result of which was negative. (Tr. 227. Def.'s Ex. 2.)

Mr. Ball gave supporting testimony that he observed the two sanitation trucks parked "tail gate to tale gate" in the parking lot. (Tr. 199.) He testified that the Defendant was driving approximately 4 or 5 miles per hour through the parking lot (Tr. 200), and when the front of the Defendant's truck was halfway between the tailgate and front bumper of the sanitation truck, Mr. Ball saw the decedent exiting the passenger side of the sanitation truck. (Tr. 200-201.) According to Mr. Ball, the decedent had one "hand on a grip and a cell phone...and it looked like he was ready to step down." (Tr. 201.) Mr. Ball stated that he never saw the decedent in front of the utility truck. (Tr. 203.) The first time Mr. Ball realized there was an accident was when he "felt a bump," and the Defendant asked him if there was a speed bump in the parking lot. (Tr. 203.) When Mr. Ball exited the truck, he saw "some legs, somebody laying on the ground." (Tr. 203.) Mr. Ball, who has "a little EMT training and first aid training at work" (Tr. 204), checked the decedent for a pulse, and testified that there were no "signs of life." (Tr. 204.) He observed that the same cell phone that the decedent appeared to have in his hand when the decedent was exiting his sanitation truck, "laying under the truck." (Tr. 204.)

Police Officer Thomas Johanson was trained as an "on scene motor vehicle investigator," (Tr. 41) and was "the lead accident investigator" at the scene of this accident. (Tr. 42.) He testified that there were no marks or other evidence on the front of the Defendant's utility truck or the body of the truck to indicate that it had come into contact with the decedent. (Tr. 99.) He

also stated that there was about 6 feet between the side of the utility truck and the side of the garbage truck from which the decedent exited (Tr. 55-56), and that the passenger door of the garbage truck from which the decedent exited was about 4 feet wide. (Tr. 95.) Officer Johanson also stated that, after the accident, the decedent's cell phone was under the utility truck and about 2 feet from the decedent's right hand. (Tr. 105.)

At the scene of the accident, Officer Johanson also took the statement of Mr. William Deleo, who was the driver of the garbage truck in which the decedent was riding. Mr. Deleo, who had died between the time of the accident and trial, told Officer Johanson that the decedent was exiting the sanitation truck to get a sandwich and drink. Mr. Deleo also told Officer Johanson that he applied the parking brake to his sanitation truck, and that as he was applying the brake, the decedent was already exiting the truck. (Tr. 92, 105-106.) According to Mr. Deleo, as the decedent was opening the door, Mr. Deleo looked in the mirror and could see the utility truck coming "slowly, the way you would drive through a parking area." (Tr. 92.) Mr. Deleo stated to Officer Johanson that the decedent "went out of sight and closed the door." (Tr. 92.) In his statement to Officer Johanson, Mr. Deleo said he never saw any portion of the accident, and that the Defendant was the first person to inform Mr. Deleo that an accident occurred. (Tr. 107.)

Dr. Edward McDonough, a forensic pathologist and the deputy Chief Medical Examiner for the State of Connecticut, performed an autopsy of the decedent. Dr. McDonough testified that the cause of death was a "severe head injury caused by a crushing type trauma and that was the most significant trauma, as well as abrasions or scrapes to other parts of his body." (Tr. 143.) Dr. McDonough also testified that there was also a fracture in the decedent's "right humerus or right upper arm...consistent with being run over by a tire of a truck."[1] (Tr. 149.)

After the first day of trial, the Court distributed a draft of a jury charge on comparative

---

[1] At trial, evidence was also presented on damages.

4

negligence to counsel. The Court also held a charging conference that evening, at which there was a difference of opinion about whether and how the Court should instruct the jury on damages for pre-impact terror, conscious pain and suffering, and the life expectancy of the decedent. (Tr. 159-164.) After summation, the Court and counsel agreed on the form of the verdict sheet (Tr. 283-284), and the Court granted Plaintiffs' request to charge the jury on pre-impact terror. After hearing the charge, the jury retired and rendered a verdict finding that the Defendant was negligent in causing the decedent's death (1st Question), but answering "no" to the 2nd Question on the verdict sheet which asked the following: "was the Defendant's negligence a substantial factor in causing the death of [the decedent.]" (Tr. 325.) The jury was then polled (id.), and the Court then held the jury thanking them for their service, explaining the importance of jury service to the system of justice in the United States, and finally explaining how juries insulate verdicts from criticism of political influence. During these proceedings before the jury was excused, Plaintiffs' counsel made no objection to the charge of the Court, the verdict sheet, or the consistency of the verdict. This motion was filed six days later on March 24, 2008.

## DISCUSSION

Under these circumstances, Plaintiffs' motion for a new trial is denied. The law in this Circuit is:

> F.R. Civ. P. 49(b) provides that if the jury's answers are inconsistent with each other the court shall return the jury for further consideration of its answers or shall order a new trial. An objecting party, however, is not entitled to a new trial unless it objects before the jury is discharged….the only efficient time to cure these possible problems of inconsistency would be after the jury announced the results of its deliberations and before it was excused. To allow a new trial after the objecting party failed to seek a proper remedy at the only possible time would undermine the incentives for efficient trial procedure and would allow the possible misuse of Rule 49 procedures…by parties anxious to implant a ground for appeal should the jury's opinion prove distasteful to them.

Haskell v. Kaman Corp., 743 F.2d 113, 123 (2d Cir. 1984) (quoting Skillin v. Kimball, 643 F.2d 19, 19-20 (1st Cir. 1981)). See also United States Football League v. National Football League, 842 F.2d 1335, 1366 (2d Cir. 1988)("a party's failure to bring alleged inconsistencies in the verdict sheet to the court's attention before the jury has been discharged waives the right to have the alleged inconsistencies remedied by a new trial."); Lavoie v. Pacific Press & Shear Co., Div. of Canron Corp., 975 F.2d 48, 54 (2d Cir. 1992) (we think defendant waived its challenge to the jury verdict as inconsistent. It [h]ad ample opportunity to raise its objection to the allege inconsistency and the course of the trial proceedings put it on notice that an inconsistency might arise.); Chere Amie, Inc. v. Windstar Apparel, Corp., 2003 U.S. Dist. LEXIS 15261 (S.D.N.Y. 2003) ("The timing of a party's objection to the perceived inconsistency in the verdict, however, is the single most critical factor in determining whether to grant new trial."). Accordingly, Plaintiffs' objection has been waived and the claim fails.

Plaintiff's claim of an inconsistent verdict also fails on the merits. The Second Circuit has stated that "[a]s a general matter, a motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 133 (2d Cir. 1998). Here, the jury considered the comparative negligence of the Defendant and the decedent, and found that although the Defendant was negligent in causing the decedent's death, that negligence was not a substantial factor (proximate cause) in causing the death.[2] New York State law on comparative negligence is clear that a defendant can be negligent in causing a person's

---

[2] "The current edition of the New York Pattern Jury Instructions has ceased to use the term 'proximate cause.' The reason for the change is that the word 'proximate' is confusing to the lay juror and, because it does not communicate causation, it is also not descriptive of the substantial factor concept." DiMaggio, 668 N.Y.S. 2d 449, 450 (N.Y. Sup. Ct.1998). Here, the jury was only instructed with regard to the substantial factor concept, in accordance with the current New York Pattern Jury Instructions.

6

death, but not liable for that death because his negligence was not a substantial factor in causing the death.

> The issue of whether a defendant's negligence was a proximate cause of an accident is separate and distinct from the negligence determination. A defendant may act negligently without that negligence constituting a proximate cause of the accident. In order to find that defendant's negligence was a proximate cause of the harm caused to plaintiff, the jury must find that the negligence was a substantial factor in bringing about the injury. There may be one, or more than one, substantial factor. Based upon the evidence, the jury was entitled to conclude that although [both defendants] had behaved in a negligent manner, [one defendant's] negligent conduct alone was the only substantial factor in bringing about the injury.

Ohdan v. City of New York, 268 A.D.2d 86, 89 (N.Y. App. Div. 1st Dep't 2000). See also Meade v. Hisler, 306 A.D.2d 387, 388 (N.Y. App. Div. 2d Dep't 2003) (holding that "the jury returned a consistent verdict, finding that the defendant's negligence was not a substantial factor in contributing to the decedent's death."); Briccio v. Disbrow, 212 A.D.2d 565, 566 (N.Y. App. Div. 1st Dep't 1995) ("even though the defendant...was negligent, the plaintiff's actions were the sole proximate cause of the accident."); Moskowitz v. Israel, 209 A.D.2d 676 (N.Y. App. Div. 2d Dep't 1994) ("that even though the defendant was negligent, the injured plaintiff's actions were the sole proximate cause of the accident.") A jury's verdict is inconsistent only when the issues are "so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause." Rubin v. Pecoraro, 141 A.D.2d 525, 527 (N.Y. App. Div. 2d Dep't 1988). The facts of this case logically permitted the jury to find that the decedent had fallen under the utility truck just as it passed.

In support of their motion, Plaintiffs rely on DiMaggio v. M. O'Connor Contracting Co., 668 N.Y.S. 2d 449 (N.Y. Sup. Ct.1998), where the court found that the jury's verdict, which was that the defendant was negligent, but that the negligence was not a substantial factor in causing the accident, was inconsistent with the evidence presented at trial. In DiMaggio, however, the

7

plaintiff was working on an A-frame ladder, and an employee of the defendant struck the ladder with wheelbarrow, which caused the plaintiff to fall from the ladder and injure himself. There, the defendant's negligence was clearly a substantial factor in causing the plaintiff's injury. Here, on the contrary, the jury could reasonably conclude that the Defendant's negligence in failing to sound the horn was not a substantial factor in causing the decedent's death.

Plaintiffs' reliance on Bucich v. New York, 111 A.D.2d 646 (N.Y. App. Div. 1st Dep't 1985) and Brecht v. Copper Sands, 237 A.D.2d 907 (N.Y. App. Div. 4th Dep't 1997) is also misplaced. In both of those cases, the defendants were negligent in allowing pre-existing dangerous conditions, which were indisputably a proximate cause of plaintiffs' injuries.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for a new trial (Doc. # 30) is DENIED.

IT IS SO ORDERED.

Dated: New York, New York
July 1*5*, 2008

_____
Robert P. Patterson,
U.S.D.J

*Copy of this Opinion and Order Sent to:*

*Attorney for Plaintiffs*

Mr. Michael Stratton, Esq.
Stratton Faxon Firm
59 Elm Street
New Haven, CT 06510
Tel: (203)-624-9500
Fax: (203)-624-9100

*Attorney for Defendant*

Ms. Elizabeth M. Hecht, Esq.
Mead, Hecht, Conklin & Gallagher, LLP
109 Spencer Place
Mamaroneck, NY 10543
Tel: (914) 899-3100
Fax: (914) 899-3101